Good morning, Your Honor. Good morning, Your Honors. May it please the Court, I am Maitreya Badami. Along with Arthur Wachtell, I represent the appellant and petitioner, Carl Soturkus. I'm going to refer to him by the name Soturkus, since that is the name he has been referred to throughout the proceedings in terms of all the evidence in the case, although it is an alias. So the reason that we're here is because this Court has granted a certificate of appealability as to the issue of whether or not the United States had jurisdiction over the Lucky Star with respect to Mr. Soturkus's case. In this case, Mr. Soturkus stands convicted of count three, which was aiding and abetting the distribution of 2.4 tons of hashish from a vessel subject to the jurisdiction of the United States. And at all times relevant to the case, that statute required for the government to prove the jurisdictional element to the jury as an element of the offense, as this Court has previously held. As you also are aware, the statute has subsequently been amended. However, so this case will have limited precedential impact, but the issues in this case nonetheless stand. Jurisdiction under the MDLEA requires two considerations. One is of a constitutional dimension. The other is the statutory requirements. The constitutional dimension requires that the application of U.S. jurisdiction over the vessel in question not offend due process, which the Court has held means that there must be a sufficient nexus established by the prosecution between the conduct to be condemned and the United States. And that inquiry is a mixed question of fact and law that is individual as to each defendant. Is there sufficient connection if there was consent by the country? Does that take care of it, if we were to find that there's sufficient consent by the country? No. Because that the issue of whether or not there's consent by the flag nation is one of the statutory requirements of jurisdiction of the MDLEA at the time. There are, as this Court pointed out in the first Medjug opinion, which was the 1994 opinion, jurisdiction under the MDLEA has two aspects. One is the statutory aspects. There must be at least one of the statutory requirements met in order for the U.S. to meet the statutory element of jurisdiction. In that case, consent of the flag nation is one of the several possible ways that the U.S. could meet the statutory requirement. However, notwithstanding how the government meets the statutory requirements for jurisdiction, there is this overlay, as the Court has referred to it, an overlay requirement that the prosecution not violate due process. And a sufficient nexus isn't met, necessarily, by any of the statutory factors being met. Instead, a nexus requires an individual look at the defendant's conduct and whether or not there was a nexus between that conduct and the United States sufficient to justify the U.S. pursuing its interest in prosecuting the case against the defendant. Is the due process issue certified or only the consent issue? The issue of the court granted its certificate of appealability on a broadly worded answer, which was whether the U.S. had jurisdiction over the lucky star, which is the vessel. And that has to be interpreted to include any aspect of jurisdiction that was raised in the district court by the Petitioner. And, in fact, in the Petitioner's request for a certificate of appealability, he essentially raises four interrelated issues, all of which go to the jurisdiction of the United States. Having granted a certificate as to whether there is jurisdiction, it would seem clear that the court is entertaining both the constitutional issues and the statutory issues. And in this case, the constitutional issue has not been adequately demonstrated. Here, the district court below, the proceeding below, although it initially concluded that there had been a waiver of the issue, went ahead and did address the merits of the nexus issue. And that is – it did so because Mr. Suterkis was an improper Petitioner at the time that he raised his 2255 petition. And the court did address the merits of nexus, and in so doing, it totally erred by concluding that there was a sufficient nexus here because the drugs in question on the lucky star were intended for ultimate distribution into the United States. That factual finding, which was not based on an evidentiary hearing, is clearly in contradiction to the district court's own prior holding after a three-day evidentiary hearing on nexus, that the drugs in this case were not intended to come to the United States, that it had not been proven by the government by a preponderance of the evidence that there was an intention to bring this hashish to the United States. Rather, the district court, in its initial evidentiary hearing, had ruled that the con – the con standard of establishing a nexus, which is the Weeding case, which is that the plan for distributing the drugs ultimately would have effects in the United States, that that standard had been satisfied. And that holding was based on two important factual considerations. One, the district court was looking at the 70-ton hashish distribution conspiracy. Its comments all over the record indicate that that is what it was looking at. And, A, there was expert testimony from Jean Martin of the Royal Canadian Mounted Police that a 70-ton load of hashish going to Canada would have ultimately some portion of that hashish would end up in the United States, based on the actual conversion of hashish by the Canadian market. Secondly, there were a number of acts by Mr. Soterkis that were looked at at the district court and listed, and the government has them in bullet points in its brief, that the court held ultimately were sufficient to establish a connection between Soterkis and the 70-ton conspiracy to distribute hashish aboard the Lucky Star. However, the reason that that factual finding, which then was inadvertently actually not stated correctly by the district court following appeal, is not sufficient in this case is because Mr. Soterkis was not convicted of the conspiracy to distribute 70 tons of hashish aboard the Lucky Star. He was not convicted of count one, and he was not convicted of count two, which is the other count concerning the 70-ton load. He was convicted only of the distribution, the aiding and abetting the distribution of this 2.4-ton offload. And all of the acts that the district court pointed to, that the government reiterates, that Mr. Soterkis committed, that connect him to the United States, every one of those acts postdates this 2.4-ton offload. In other words, the government is trying to point to Mr. Soterkis's conduct to say he created his own nexus, yet that nexus didn't exist at the time that the actual distribution for which he has been convicted occurred. Instead, so first of all, this issue of whether or not his conduct creates nexus cannot apply in this case. And secondly, the finding that the district court made that some portion of 70 tons would inevitably end up in the United States cannot be assumed to apply. Earlier, about whether the certificate of appealability included the issue of the nexus or of the due process. Am I looking at the right certificate of appealability that's on page 41 of the excerpt that says whether the United States, the certificate of appealability is granted with respect to the following issue, whether the United States had jurisdiction over the Lucky Star? Yes, Your Honor. That's the certificate that you say includes all jurisdiction, including nexus? That the first opinion in MedJEC, yes, Your Honor. The answer is yes. And the reason is that- All right. And you think that whether the United States had jurisdiction over the Lucky Star is an issue that includes whether there's nexus over Mr. Young, or Soterkis's particular transaction? I do. And that is because as this Court set out in its first opinion in MedJEC, which is the 1994 opinion, that jurisdiction, the question of jurisdiction under the MD-LEA has a two-part analysis. It always has a two-part analysis. One part is statutory and one part is constitutional. If you don't meet the constitutional aspect, you cannot, the U.S. cannot exercise its jurisdiction to prosecute the particular crime. The question is whether it had jurisdiction over a particular ship, vessel. That includes the question of whether it has jurisdiction over a particular drug transaction? Well, considering that- I mean, you might want to say that you would ask us to expand the certificate of appealability, but it's very hard to understand your representation that this certificate covers the issue you're arguing. Well, Your Honor, if in fact the Court does not feel that the certificate of appealability as granted would govern Mr. Soterkis's specific conduct, then I would ask that that certificate be expanded to include the issues that were briefed both by both sides and which include the nexus issue. With respect to jurisdiction over the Lucky Star- Before you leave that point, though, I wanted to go back to the MedJEC opinion, I guess. In the first appeal, your client agreed to be bound by the resolution of the MedJEC case. So the panel incorporated that and said, rejected your contentions in that case because MedJEC controlled on the nexus question. Why isn't that law the case? It is true that Mr. Soterkis agreed to be bound by that holding. The reason that it is inappropriate for the Court's holding in MedJEC 3 to bind him is because the Court didn't actually address Soterkis. Oh, no, but when our panel heard the first appeal of this, we heard the arguments and counsel then said, we agree that the prior, because we asked the question, what about MedJEC and how can we have inconsistent holdings? And the response was, well, we're going to be bound by that case. And so that, rightly or wrongly, is in the order in our prior disposition of this case. So why doesn't that just resolve it? Well, if that resolves it, it does so as a violation of Mr. Soterkis' due process rights. And if, I would agree that. You may have an ineffective assist to counsel claim, but that doesn't get you to the merits directly here because our Court's already ruled on the very question that you're presenting to us today. Well, actually, the specific question is not actually what the Court ruled on. The challenge that was made in Soterkis' direct appeal this time around is not the same challenge on nexus that is being raised here. Mr. Soterkis raised this challenge in his 2255 motion, and he did so in light of a claim of ineffective assistance of counsel on his direct appeal. The issue that specifically that I've been talking about is not actually the one that was raised in the direct appeal. Well, it's pretty close, though, I mean, if it's not right on point. Well, anyway, I take your argument. All right. Well, your time has more than expired. Thank you. Thank you. Good morning. May it please the Court. My name is Louis Davis. I'm an assistant U.S. attorney in this district and was trial counsel below in this matter. With respect to the nexus question, let me address three reasons why I believe the Court should not address the question and why it should affirm the district court's denial of Jung's 2255. First, we believe there's a We should affirm what? The district court's denial of the 2255 of Jung and not grant this appeal. All right. Are you saying that we should not address the due process issue? What I'm saying, Your Honor, is that I don't think there's a basis for the Court to be able to reach the due process question, and there are three reasons for that. The first is we believe there's a jurisdictional bar. I couldn't affirm the holding if we aren't going to consider the issue. Your first request, I assume, is that we not consider the due process issue. I believe the Court has precluded from considering it, yes. That's correct. And in the case We understand. I'm sorry, Your Honor. We understand that argument. What's your second? And second, that there's a jurisdictional bar. As counsel has already stated, this argument was not raised on direct appeal. And as a result, the defendants under the obligation to demonstrate cause and prejudice for not having raised that issue. And the defendant has not done that. So you're conceding basically that this issue wasn't before our prior panel, this precise issue? No. I'm not conceding that. Let me address that directly. Are you talking about the jurisdictional question on the lucky star, or are you talking about the nexus question when you're in the majority? With respect to the nexus question, I believe that question was fully resolved by this Court. Defendant has asked the Court to make a distinction between the 2.4 tons and the 70 tons. Just to set the factual scenario straight, there were 70 tons on the mothership. The plan was to offload all 70 tons. Because of bad tempers and bad weather, only 2.4 tons of that hashish was offloaded. Right. As Judge Walker held in denying the 2255, the issue of nexus is addressed to the question of at the time the 2.4 tons was offloaded, were there sufficient connections between the defendant and the United States to warrant exercise of the extraterritorial application of 1903. And I want to address the conflation between jurisdiction and nexus, because the Medchuck opinion clearly states that jurisdiction is a statutory element and the nexus is not an element. In assessing whether there's jurisdiction, Congress looks to see if there was some expressed intent for the statute to apply extraterritorially. And the section of 1903H clearly states it's intended to reach acts of possession, manufacture, or distribution that are committed outside the territorial jurisdiction of the United States. In determining the nexus question, however, the analysis is one in which the Court looks at the particular acts of the particular defendant and tries to determine whether it would be fair under due process considerations to apply that statute to him. Counsel makes a reference to the definition of nexus in Kahn and suggests that the district court, in conducting its three-day evidentiary hearing, relied upon the wrong standard. It's true that the district court did make a reference to Kahn, but it's also true that the district court articulated a standard which has been adopted by this Court, which is a sufficient nexus exists where an attempt at transaction is aimed at causing criminal contacts within the U.S. and where the plan for shipping the drugs was likely to have effects within the U.S., all of which were clearly shown. Counsel misstates the showing in our brief at pages 20 to 22 regarding the facts on which the district court relied. Not all of those connections occurred after the offload. Some occurred while the plan was in process for the offload. So we believe that the nexus issue was fully resolved by the Court on direct appeal. The Court's already heard the COA argument, and the district court ruled that the issue regarding nexus was briefed too late. With respect to the issue for which the COA was granted, and we take issue with the defendant's distinction here, because the COA application did address four issues. The COA itself was granted as to only one of them. They are distinct issues. One of the issues that was independently articulated was whether there was nexus. Another was whether the nationality principle provides sufficient basis for the exercise of jurisdiction. The fourth was whether the NBLA itself was constitutional. None of those was the COA granted for, only the one dealing with consent. And in the issue of consent, the only issues here are two, whether the flag nation's consent was sufficient to warrant jurisdiction, and alternatively, whether the nationality principle provides a basis for the exercise of jurisdiction. Our argument here, Your Honors, is that given the fact that the COA addresses only the flag nation consent question, and does not address, and was not issued for the question of whether there is a nationality principle in it that could be applied here, we believe the Court should affirm the district court's denial of the 20 to 55 and deny this appeal based solely on the point that there was an independent basis for jurisdiction which cannot even be addressed in this appeal. But even if the Court decides to address the flag nation consent independently, we urge that the Court affirm the district court's decision and deny the appeal, because under the active State doctrine, the basis for consent cannot be challenged. And even if the Court were to decide that the active State doctrine were not applicable here, Section 1903d of Title 46 provides that the failure to comply with international law shall not provide the defendant with a defense under this chapter. So if the Court analyzes the use of the nationality principle here, it needs to look at Section 1903, which states that one of the bases for exercising jurisdiction is whether or not the distribution of a controlled substance by any U.S. citizen on board any vessel. In this case, it's beyond dispute that both Jung or Sotiris and McNelly were both American citizens. McNelly was on board the Lucky Star, the mothership transporting the 70 tons. Jung managed the communications part of the conspiracy from the Bay Area here in radio communications with McNelly. It was primarily on that basis, in addition to others, including meetings with undercover agents and telephone conversations here addressed at the U.S. Our brief at 20-22, that the Court concluded there was ample contact between the two. There are other bases on which jurisdiction could be asserted here, but the instructions to the jury in this case and the issues before the Court are whether or not flagnation consent on the one hand or the nationality principle on the other afford the basis for the application of the statute. Since the nationality principle itself was not a part of the COA and jurisdiction can be found based on that, we ask the Court to deny the appeal and find that the COA was improvidently granted. Thank you, Your Honor. Thank you. We'll give you one minute for rebuttal, if you'd like. With respect to the question of whether the COA was granted exclusively as to flagnation consent, we would differ with that. The COA, even if it only pertains to the lucky star, would pertain to whatever method of achieving U.S. jurisdiction the prosecution proved over the lucky star, and that was challenged by Mr. Suterkis both on the nationality principle and on the consent of the flag nation. But with respect to the nexus, as the government concedes the --"it is an individual finding as to the defendant's conduct that matters and not simply a legal issue. Therefore, MEDJUK III, although it purported to dispose of the issue of nexus with respect to Suterkis, never reached Suterkis's conduct and cannot be deemed to have foreclosed the issue for him. Jurisdiction can always be raised at any point, even on appeal. It is fundamental and cannot be waived, as this Court is well aware. And in order to have jurisdiction under the MDLA, there must be a sufficient nexus. And another --"and not to have so, not to prove so, not to have an evidentiary hearing below, and allow the government to or force the government to prove that there was a sufficient nexus to Mr. Suterkis as to Count III, violates his due process rights. And as a result, the district court should be remanded to the district court for an evidentiary hearing as to nexus. With respect to the issues of flag nation consent, we would request a remand for further discovery that has always been, has been fully briefed and has been, always been an issue. Thank you, counsel. The case is argued and will be submitted.
judges: Reinhardt, Thomas, W. Fletcher